## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Case no.  19-cv-6161 |
| | ) | |
| EDWARD BEARDEN, | ) | JURY TRIAL DEMANDED |
| In his Individual Capacity, and | ) | |
| | ) | |
| ANNE L. PRECYTHE, | ) | |
| Director of the Missouri Department | ) | |
| of Corrections, in her Individual | ) | |
| Capacity, | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff Jane Doe, by her attorneys, as and for her Complaint, hereinafter states and

alleges as follows:

## PRELIMINARY STATEMENT

1. Defendant Corrections Officer Edward Bearden (hereinafter "Defendant Bearden" or

   "Bearden") harassed, abused, and sexually assaulted Plaintiff Jane Doe (hereinafter

   "Plaintiff"). This harassment, abuse, and sexual assault all occurred while Plaintiff was

   confined at the Chillicothe Correctional Center, a women's prison in Chillicothe,

   Missouri, between May of 2015 and November of 2017. Plaintiff was sexually assaulted

   by Defendant Bearden over fifty-two times while incarcerated at Chillicothe. Defendant

   Anne L. Precythe (hereinafter "Defendant Precythe") knew or should have known of

   Defendant Bearden's harassment, abuse, and sexual assault of Plaintiff. Plaintiff suffered

1

severe physical and emotional trauma due to the actions of Defendant Bearden and Defendant Precythe.

2.  Plaintiff brings this suit pursuant to 42 U.S.C. § 1983, seeking compensatory damages and punitive damages against all Defendants for violations of her constitutional rights while acting under color of state law, together with reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

3.  Plaintiff asserts various supplemental state law claims against Defendants.

## JURISDICTION AND VENUE

4.  Jurisdiction of this Court is properly invoked pursuant to federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) and the aforementioned statutory provisions.

5.  Plaintiff's claim for attorney's fees and costs is authorized under 42 U.S.C. § 1988.

6.  Venue is proper pursuant to 28 U.S.C. § 1391(b)(2). All actions alleged herein occurred in Chillicothe, Missouri, which is located in the Western District of Missouri.

## PARTIES

7.  Plaintiff is an employed, single mother of three, working and living in central Missouri.

8.  Plaintiff was, at all times relevant to this litigation, incarcerated on a non-violent offense at the Chillicothe Correctional Center, a women's prison run by the State of Missouri Department of Corrections.

9.  Defendant Bearden was at all relevant times employed by the Missouri Department of Corrections as a Corrections Officer at the Chillicothe Correctional Center. Defendant

2

Bearden ceased working at the Chillicothe Correctional Center in August 2018. Defendant Bearden is sued in his individual capacity.

10. Defendant Anne Precythe has been the Director of the Department of Corrections for the State of Missouri since February 9, 2017. Upon information and belief, Defendant Precythe is still in this position. Defendant Precythe is sued in her individual and official capacities.

## FACTS

### A. DEFENDANT BEARDEN'S THREATENING BEHAVIOR

11. Defendant Bearden first approached Plaintiff in or around September of 2015, when Plaintiff was assigned to work in the Canteen.

12. Canteen is a store within the prison from which inmates may purchase consumer goods such as snacks and hygiene items.

13. At all relevant times, the Canteen had security cameras.

14. Some areas in the Canteen were not recorded by the security cameras.

15. Defendant Bearden approached Plaintiff in areas of the Canteen where the security cameras could not record him.

16. Defendant Bearden frequently approached Plaintiff while she was working and made inappropriate and suggestive comments including, but not limited to, "You're the most beautiful girl I've ever met," and "You could be a supermodel."

17. Defendant Bearden's comments escalated into sexually aggressive and menacing statements including, but not limited to, "I'd like to get you from behind."

3

18. During late November or early December of 2015, Defendant Bearden approached Plaintiff and told her, "I'd sure like to see you sit on that and spin." Plaintiff was decorating the Yard (a recreational area for inmates) for Christmas. Defendant Bearden made this statement while gesturing to a decoration's phallic shape.

19. Defendant Bearden attempted to conceal his remarks by covering his mouth with his hand.

20. While Plaintiff was in the Yard, Defendant Bearden would often approach her, put his hands on her shoulders, and brush up against her.

21. Defendant Bearden's touching was and is prohibited by the Missouri Department of Corrections Department Procedure D1-8.6.

## B. DEFENDANT BEARDEN'S SEXUAL ASSAULTS

22. Plaintiff was accepted into the Cosmetology Educational Program at Chillicothe in October of 2016.

23. Shortly after Plaintiff began attending Cosmetology classes, Defendant Bearden began substituting in Education, where the Cosmetology class convened, at least once a week.

24. Defendant Bearden knew when Plaintiff was in Cosmetology class.

25. Plaintiff was assigned the duty of retrieving cleaning tools and supplies for Cosmetology class from the storage area every Thursday and/or Friday.

26. The storage area was located within the officers' lounge.

27. The officers' lounge had a desk stationed in front of it by which one must pass to enter the room.

28. Ms. Sharon Grant was, at all relevant times, the head of Vocational Technology.

4

29. Ms. Grant sat at the desk by which one must pass to get into the officers' lounge.

30. Ms. Grant gave Plaintiff permission to enter the officers' lounge when she entered to retrieve cleaning supplies.

31. Plaintiff would enter the officers' lounge, walk to the back of the room, and enter the storage area.

32. The first time Plaintiff was assigned to retrieve cleaning supplies was in November of 2016.

33. Defendant Bearden followed Plaintiff into the storage area, cornered her, and grabbed her waist from behind.

34. Plaintiff turned around, pushed Defendant Bearden away, and asked him, "What are you doing?" He responded, "I know you want this. Don't push me away." He told her he had been watching her for a long time.

35. Plaintiff tried to leave, and Defendant Bearden told her, "You're not going anywhere. You have something you have to do for me."

36. Defendant Bearden reached out and gripped Plaintiff's shoulder, grasping a nerve that caused her pain; when she resisted him, he used both hands to forcibly push her shoulders downward, forcing Plaintiff to her knees.

37. Defendant Bearden unzipped his pants and exposed his penis to Plaintiff. He showed Plaintiff a distinctive racing-stripe he had shaved into his pubic hair and told her, "I did this for you, baby, I did this for you."

38. Defendant Bearden roughly grabbed the hair on the back of Plaintiff's head and forced her head toward his penis.

39. Defendant Bearden forced his penis into Plaintiff's mouth.

5

40. Defendant Bearden ejaculated into Plaintiff's mouth while continuing to clutch the back of her head.

41. Afterwards, Defendant Bearden threw a pocket handkerchief at Plaintiff, told her to clean herself up, and to get back to where she needed to go. He then left Plaintiff in the storage area and exited the lounge.

42. Defendant Bearden sexually assaulted Plaintiff in the storage room in substantially the same manner at least once per week for the entirety of the Cosmetology Educational Program, which ran for one year. This resulted in over fifty-two separate assaults.

43. Plaintiff never consented to these sexual assaults.

44. There were no cameras in the lounge or the storage area.

45. Defendant Bearden told Plaintiff he did not have to worry about getting caught because there were no cameras in the lounge or the storage area.

46. Due to a sports injury, Plaintiff used crutches and her knee was in a medical bandage from approximately January to April of 2017.

47. Defendant Bearden continued to sexually assault Plaintiff even when she was injured.

48. Defendant Bearden's repeated attacks on Plaintiff continually left noticeable bruising on her shoulders and upper back.

49. Plaintiff's bruises were observed by her roommates, and the bruises looked like obvious handprints.

## C. DEFENDANT BEARDEN'S THREATS AND HARASSMENT

50. Defendant Bearden threatened Plaintiff by telling her he had looked at her Facebook page and knew what her children looked like.

6

51. Because Plaintiff reasonably feared that Defendant Bearden would harm her children, Plaintiff was afraid to report Bearden's assaults.

52. Plaintiff did not report these assaults because she believed she would be placed in solitary confinement, also known as the "Hole," would lose her place in the Honor Dorm, and would be removed from the Cosmetology program.

53. Had Plaintiff reported these assaults, she would have been placed in solitary confinement, would have lost her place in the Honor Dorm, and would have been removed from the Cosmetology program.

54. In or around February of 2017, Plaintiff received a parole hearing.

55. Defendant Bearden knew this hearing was taking place.

56. A few days before Plaintiff's parole hearing took place, Defendant Bearden left a hot-pink sticky note on Plaintiff's vanity in Cosmetology which stated, "You know who this is from," and listed a phone number.

57. The same day the sticky note appeared, Defendant Bearden cornered Plaintiff as she was leaving the restroom and told her, "If you don't call me, there's going to be consequences."

58. Soon after making this threat, Defendant Bearden approached Plaintiff in the Yard and told her, "That phone's never rang."

59. Defendant Bearden continued to threaten Plaintiff with consequences if she did not call, including, but not limited to, telling her that he knew where her children were.

60. Plaintiff phoned the number on the sticky note once from the prison because she reasonably believed Defendant Bearden would harm her children.

7

61. Defendant Bearden answered the phone and told Plaintiff not to use names during the phone call.

62. During the phone call, Defendant Bearden told Plaintiff that, when she was released, he would be waiting at the front gates for her.

63. During the phone call, Defendant Bearden threatened Plaintiff by telling her if she did not come with him when she was released, that he knew where to find her.

64. During the phone call, Defendant Bearden told Plaintiff he wanted to take her on a trip to Puerto Rico.

65. During the phone call, Defendant Bearden told Plaintiff that his retirement money of $3,400 per month was enough to raise her children.

66. After the phone call, Plaintiff tried to avoid any contact with Defendant Bearden, but he knew her housing assignment and her schedule, and he would go out of his way to find her.

## D. IMPACT OF DEFENDANT BEARDEN'S SEXUAL ASSAULTS, THREATS, AND HARASSMENT

67. Prior to Defendant Bearden's sexual assaults, threats, and harassment, Plaintiff was at the top of her class in Cosmetology, took an active and engaged role in her own education, tutored other female inmates, and regularly participated in various recreational activities throughout Chillicothe.

68. Plaintiff became reclusive as a result of Defendant Bearden's sexual assaults, threats, and harassment. Plaintiff became withdrawn during Cosmetology class. Plaintiff also chose to remain inside her housing unit instead of going out into the Yard.

69. Plaintiff's roommates noticed her sudden change in behavior and demeanor, and found her crying on more than one occasion.

70. Defendant Bearden repeatedly asked Plaintiff's friends and roommates where she was.

71. Defendant Bearden began appearing in Plaintiff's housing unit when he knew her roommates were gone.

72. Defendant Bearden would enter Plaintiff's cell to stare at her, often while she was lying in bed.

73. The "Two-Square" policy at Chillicothe states that inmates and guards are to give each other a radius of two, 12-inch floor tiles of space at all times.

74. Defendant Bearden repeatedly violated the Two-Square policy while he was in Plaintiff's cell.

75. Plaintiff was physically and emotionally injured by Defendant Bearden's attacks.

76. Plaintiff continues to this day to suffer from pain in her shoulder where Defendant Bearden exerted force to push her to the ground for each attack.

77. Plaintiff has difficulty sleeping, and suffers from nightmares and sleep terrors.

78. Over the course of a month, Plaintiff took great efforts to utilize her Cosmetology license, but found she was unable to employ the necessary skills due to the intense anxiety she experienced whenever middle-aged men came into the hair salon where she worked. This anxiety was so extreme that it regularly caused Plaintiff to become nauseous to the point of vomiting.

79. Plaintiff experiences difficulty with trust and with physical intimacy. Her children cannot hug her without first asking permission.

80. Plaintiff currently sees a psychologist and a psychiatrist to cope with her emotional trauma.

81. Defendant Bearden's actions were without the consent of Plaintiff, were offensive, unwanted, and unwelcome, and caused Plaintiff serious and persistent emotional and physical harm.

82. All of Defendant Bearden's actions were done under color of state law.

## E.  DEFENDANT ANNE PRECYTHE'S INVOLVEMENT

83. Defendant Anne Precythe has been the Director of the Department of Corrections for the State of Missouri since February 9, 2017.

84. 34 U.S.C.A. Chapter 303, the Prison Rape Elimination Act (PREA), was enacted by the United States Congress in 2003 and remains in effect to the present day.

85. PREA was enacted in response to an alarming number of sexual assaults that occur in state and federal prisons each year.

86. 28 C.F.R. Section 115, the Prison Rape Elimination Act National Standards, was promulgated under the PREA to set forth national standards for the detection, prevention, reduction, and punishment of prison rape. The regulations contained in 28 C.F.R. Section 115 went into effect in 2012 and remains effective to the present day.

87. Defendant Precythe affirmatively adopted the regulations and requirements of PREA through her endorsement of D1-8.13 of the Missouri Department of Corrections Department Procedure Manual, which is designed in part to ensure Missouri penal institutions' compliance with PREA.

88. PREA requires penal institutions to continuously train employees on the risk of sexual assault to incarcerated individuals.

89. PREA requires penal institutions to provide for adequate video monitoring in order to protect inmates against sexual assault that could occur in areas within the institution's physical plant that are outside the view of security cameras or in areas where staff or inmates may be isolated. 28 C.F.R. Section 115.13.

90. By virtue of her position, Defendant Anne Precythe is responsible for overseeing the Department of Corrections' implementation and compliance with PREA.

91. It was Defendant Precythe's duty to discover and prevent sexual assaults of all incarcerated individuals at all Missouri penal institutions.

92. By virtue of her position, Defendant Precythe can command penal institutions in the state of Missouri to install security cameras.

93. There were areas of the Canteen that did not have security cameras.

94. Defendant Precythe knew that there were areas of the Canteen that did not have security cameras.

95. There were areas of the officers' lounge that did not have security cameras.

96. Defendant Precythe knew that there were areas of the officers' lounge that did not have security cameras.

97. Defendant Precythe knew that these areas that did not have security cameras were areas in which inmates and prison staff interact and may be isolated.

98. Defendant Precythe knew that not having security cameras in these areas created a substantial risk that inmates would be sexually assaulted.

99. Upon information and belief, there are areas of the prison in which inmates and prison staff interact that do not have security cameras to this day.

100. All of Defendant Precythe's actions were done under color of state law.

## SECTION 1983 CLAIMS

## COUNT I – DEFENDANT BEARDEN'S SEXUAL MISCONDUCT VIOLATED THE 8TH AMENDMENT

## (AGAINST DEFENDANT BEARDEN)

101. Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 100 above as fully set forth herein.

102. Defendant Bearden, at all relevant times, acted under color of state law.

103. The acts and conduct of Defendant Bearden, including but not limited to his use of excessive physical force against Plaintiff, were calculated to and did deprive Plaintiff of her clearly established right to be free from cruel and unusual punishment in the form of violent bodily intrusion.

104. As a direct and proximate result of the acts and conduct of Defendant Bearden, Plaintiff suffered serious bodily pain, injury, and emotional distress, which continues to this day.

105. Defendant Bearden's acts were committed unlawfully, intentionally, and with malice or reckless disregard for the rights of Plaintiff.

106. Plaintiff never consented to Defendant Bearden's sexual assaults.

107. Furthermore, recognizing that inmates cannot and should not be capable of consent, the State of Missouri has enacted Section 566.145 of the Missouri Revised

12

Statutes, making it a Class E felony to have sexual contact with any individual who is confined in a prison or correctional facility, regardless of "consent." This law is a reflection of society's condemnation of the idea that an individual who is caged and under another's control at all times could ever truly consent to any sexual act while incarcerated.

## COUNT II – DEFENDANT PRECYTHE'S FACILITATION OF THE SEXUAL ASSAULTS OF PLAINTIFF VIOLATED THE 8TH AMENDMENT (AGAINST DEFENDANT PRECYTHE)

108.     Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 107 above as fully set forth herein.

109.     At all relevant times, Defendant Precythe was acting under the color of state law.

110.     At all relevant times, Defendant Precythe was performing governmental functions.

111.     Defendant Precythe was responsible for the prevention of sexual assaults against inmates in all of Missouri's penal institutions.

112.     Defendant Precythe, through her acts and omissions, facilitated the sexual assault of Plaintiff.

113.     By her policies, acts, and omissions, Defendant Precythe caused Plaintiff to be subjected to sexual assaults in violation of her rights under the Eighth Amendment.

114.     Defendant Precythe knew that staff who rape and sexually assault inmates routinely utilize physical areas outside the view of security cameras.

115.     Defendant Precythe failed to employ obvious measures to reduce the risk of rape

and sexual assault of inmates by corrections officers, including but not limited to

ensuring all areas in which inmates and prison staff interact are recorded by monitored

security cameras.

116.     The failure of Defendant Precythe to employ obvious measures to reduce the risk

of rape and sexual assault demonstrates a policy of deliberate indifference which tacitly

authorized the sexual assaults of Plaintiff.

117.     The failure of Defendant Precythe to employ obvious measures to reduce the risk

of rape and sexual assault constituted deliberate indifference to the safety, well-being,

and constitutional rights of the Plaintiff and were the direct and proximate cause of the

constitutional violations suffered by Plaintiff.

118.     Defendant Precythe knew or consciously disregarded the obvious risk of the

constitutional harms perpetrated against Plaintiff and failed to intervene, mitigate, or stop

the sexual assaults of Plaintiff.

119.     Due to Defendant Precythe's practices and policies, Plaintiff suffered and

continues to suffer physical, psychological, and emotional injuries, pain, and suffering.


## MISSOURI STATE LAW CLAIMS

## COUNT III – COMMON LAW ASSAULT

## (AGAINST DEFENDANT BEARDEN)

120.     Plaintiff incorporates and adopts by reference each and every allegation set forth

in paragraphs 1 through 119 above as fully set forth herein.

14

121.    Between 2015 and 2017, Defendant Bearden made offensive and lewd comments and gestures toward Plaintiff with intent to cause Plaintiff bodily harm, offensive contact, and apprehension of bodily harm and offensive contact.

122.    Defendant Bearden had the apparent present ability to cause harm to Plaintiff.

123.    Defendant Bearden's actions were unwanted, unlawful, and unjustified.

124.    As a direct and proximate result of Defendant Bearden's actions, Plaintiff was continuously caused to suffer great bodily harm, physical injuries, mental pain, and anguish.

## COUNT IV – COMMON LAW BATTERY

## (AGAINST DEFENDANT BEARDEN)

125.    Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 124 above as fully set forth herein.

126.    Between November 2016 and October 2017, Defendant Bearden intentionally assaulted and touched Plaintiff over fifty-two times.

127.    Defendant Bearden's actions were unwanted, unlawful, and unjustified.

128.    Defendant Bearden's contact with Plaintiff was offensive and intended to place Plaintiff in apprehension of bodily harm.

129.    The touching by Defendant Bearden was offensive because it offended a reasonable sense of personal dignity.

130.    As a direct and proximate result of Defendant Bearden's batteries upon Plaintiff, Plaintiff was caused to suffer great bodily harm, physical injury, mental pain, and anguish.

## COUNT V – NEGLIGENCE PER SE

## (AGAINST DEFENDANT BEARDEN)

131.     Plaintiff incorporates and adopts by reference each and every allegation set forth

in paragraphs 1 through 130 above as fully set forth herein.

132.     By and through the enactment of Section 566.145 of the Missouri Revised

Statutes, the State of Missouri has proscribed all sexual contact with incarcerated

individuals by staff working within a correctional facility.

133.     Plaintiff is a member of the class of individuals protected by Section 566.145.

134.     Defendant Bearden's actions violated Section 566.145, directly and proximately

resulting in injuries to Plaintiff of the exact nature intended to be prevented by the statute.


## COUNT VI – FALSE IMPRISONMENT

## (AGAINST DEFENDANT BEARDEN)

135.     Plaintiff incorporates and adopts by reference each and every allegation set forth

in paragraphs 1 through 134 above as fully set forth herein.

136.     Between November 2016 and October 2017, Defendant Bearden intentionally

detained Plaintiff in the storage area over fifty-two times for the purpose of sexually

assaulting her.

137.     Defendant Bearden's actions were against Plaintiff's will.

138.     Defendant Bearden's confinement was unjustified, unwanted, and unlawful.

139.     Defendant Bearden's confinement was outrageous and the result of evil motive or

reckless indifference to Plaintiff's rights.

16

140.     As a direct and proximate result of Defendant Bearden's confinements of

Plaintiff, Plaintiff was caused to suffer great bodily harm, physical injury, mental pain,

and anguish.


## JURY DEMAND

141.     Plaintiff hereby demands a trial by jury of all issues in this matter.


## RELIEF

WHEREFORE, Plaintiff prays for a Judgment against Defendants Bearden and

Precythe for her medical costs incurred and to be incurred, other compensatory damages

in an amount to be determined at trial, punitive damages in an amount to be determined at

trial, attorney's fees, costs and disbursements pursuant to law, and such other and further

relief as this Court deems just and proper.

Respectfully submitted,


/s/ John J. Ammann
John J. Ammann, Mo. #34308
Brendan D. Roediger, Mo. #60585
Susan McGraugh, Mo. #37430
Saint Louis University Legal Clinic
100 North Tucker
St. Louis, Mo.  63101
314-977-2778
fax:  314-977-1180
john.ammann@slu.edu
brendan.roediger@slu.edu
susan.mcgraugh@slu.edu

Jenifer C. Snow, Mo. # 67345
Ryan J. Gavin, Mo. #48691
Kamykowski, Gavin & Smith, P.C.
222 S. Central, Suite 1100
St. Louis, Mo.  63105
314-665-3280 fax:  314-762-6721
Jenifer@kgslawfirm.com
Ryan@kgslawfirm.com


*Attorneys for Plaintiff Jane Doe*

18